UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEANETTE ALLEYNE, individually and as next friend and guardian of T.J., *et al.*,

        Plaintiffs,

-against-

NEW YORK STATE EDUCATION DEPARTMENT, *et al.*,

        Defendants.

---

Docket No. 06-CV-994 (GLS/RFT)

DECLARATION OF HAZEL TORRES

I, Hazel Torres, upon my own personal knowledge, hereby depose and declare the following:

1. I am the aunt and a legal guardian of R.T.

2. R.T. is a 9-year-old boy from New York who suffers from mild mental retardation, oppositional defiant disorder and a severe behavior disorder that causes him to engage in dangerous and inappropriate behaviors.

3. R.T. is currently receiving very successful behavior modification treatment and special education at the Judge Rotenberg Educational Center, Inc. ("JRC"), in Canton, Massachusetts.

4. R.T. has a long history of engaging in aggressive and self-injurious behavior, including punching, kicking, hitting, biting and spitting on others, sticking people with pins, and choking himself and others. He also ran away at the age of six, and injured himself when he stuck a paperclip in an electrical socket while at a day treatment facility. R.T. also engages in destructive, disruptive and non-compliant behavior, such as urinating on himself and on other

{K0331337.1}

1

students' beds, throwing garbage cans, overturning desks, breaking and throwing objects, stealing money and other items, and displaying inappropriate sexual behavior. He was hospitalized after stabbing a child at school with a pencil and after throwing a glass bottle at me. Prior to entering JRC, he required a 1 to 1 paraprofessional to ride the school bus.

5. R.T.'s treatment prior to his admission to JRC included at least three psychiatric hospitalizations, including at Bellevue Hospital and Mount Sinai Hospital. R.T. had four educational placements by age four. He previously attended Harlem Hospital Day Treatment Program and Northside Center for Child Development. While living at home, R.T. frequently hit his two-year-old cousin, and my daughter had to move out of the home because she feared that R.T. would hurt her newborn child. He has been prescribed medications including Ritalin, Strattera, Risperdal, Geodon, Lithium Carbonate, Seroquel and Thorazine for his inappropriate behaviors.

6. These treatments were not successful in treating R.T.'s aggressive, self-injurious, destructive, disruptive and non-compliant behaviors, and he was admitted to JRC. Also, his destructive, disruptive, and non-compliant behaviors, many of which were antecedents to his aggressive and self-injurious behaviors, hindered him making any academic progress.

7. Since R.T.'s prior placements and treatment did not meet his needs, his local school district, the New York City Department of Education, referred him to JRC for special education and behavior modification treatment, including treatment with the Graduated Electronic Decelerator ("GED") device. R.T. was admitted to JRC on March 3, 2005.

8. R.T.'s Individualized Education Program ("IEP") specifies JRC as the recommended placement for R.T. The IEP provides for "court authorized Level III interventions to include the GED (Graduated Electronic Decelerator) and Movement Limitation and to treat

[R.T.'s] major inappropriate behaviors including aggression, destruction, major disruptive, health dangerous, and noncompliant behaviors."

9. After admission to JRC, R.T. was tried on a positive-only behavior modification treatment plan, and that was not effective enough to stop his severe problematic behaviors. JRC then sought and received permission from the Massachusetts Probate Court to add aversives, including the GED device, to R.T.'s behavior modification treatment plan. JRC added aversives to his treatment plan on or about March 2, 2006 and they had an immediate and dramatic effect on his aggressive, self-injurious, destructive, disruptive and non-compliant behaviors. All of R.T.'s problematic behaviors dramatically decreased, preventing R.T. from doing further and permanent damage to himself and others.

10. R.T. is no longer on, and no longer at risk of suffering the side effects associated with, anti-psychotic medications.

11. While at JRC, R.T. has made significant progress in his academic work, notably in mathematics, mastering the addition component of JRC's Math Facts computer program, telling time, and identifying coins and bills. He has made strides with his handwriting as well as his listening comprehension. R.T. has also shown improvement in his social and daily living skills.

12. The decline in R.T.'s problematic behaviors has enabled him to go on numerous field trips to places such as bowling alleys, shopping centers, movie theaters, sporting events and amusement centers. He also enjoyed an unsupervised visit with his family in New York. Prior to the implementation of the Emergency Regulations and with the use of aversives to treat all his problematic behaviors, R.T. was a much happier and more productive person.

13. R.T.'s placement at JRC has done more for R.T. as well as my entire family than I can express. I am very pleased with the educational progress R.T. has made at JRC, want him to continue to progress, and continue to support his treatment at JRC with the GED for all of his serious problematic behaviors, including his destructive, disruptive and non-compliant behaviors. I feel that JRC has saved, and continues to save, R.T.'s life and has given him the first real chance at getting an education.

14. Since the implementation of the Emergency Regulations and the termination of GED treatment for R.T.'s non-compliant behaviors, R.T. has exhibited greatly increased frequencies of non-compliant and disruptive behaviors that are impacting his academic and social progress, as well as his quality of life. He is becoming more non-compliant to do his work in the classroom, which is an antecedent to more dangerous and disruptive behaviors. He has been refusing to follow a learned direction and this behavior is negatively affecting his education progress.

15. Prior to the implementation of the Emergency Regulations, R.T.'s serious problematic behaviors were successfully reduced and eliminated and he was able to learn. He was able to work with teachers in classrooms and learn replacement behaviors that took the place of his aggressive and self-injurious behaviors and potentially eliminate the future need for any intrusive treatment. Also, many of his destructive, disruptive and non-compliant behaviors are antecedents to aggressive and self-injurious behaviors and by not treating the antecedents, or by losing the chance to learn replacement behaviors, J.S. would likely engage in more aggressive and self-injurious behaviors. If R.T. were to further regress, he would likely have to spend most of school time out of the regular classroom and in mechanical restraints and would make little to no academic or social progress. It would not be safe for R.T. to access the community or visit

with his family. Furthermore, if JRC could not keep R.T. safe, JRC would have to refer him back to New York, where he would likely end up in a psychiatric hospital and under the sedative and destructive influences of anti-psychotic medication.

16.  I believe that JRC's behavior modification treatment program, which uses aversives including the GED to treat all of R.T.'s problematic behaviors, is the only effective treatment for R.T.'s aggressive, self-injurious, destructive, disruptive, and non-compliant behaviors and his only chance to achieve academic success. JRC's behavior modification treatment program, including the use of aversives to treat all of R.T.'s problematic behaviors, has been the only treatment that has kept R.T. safe and improved the quality of his life by permitting him to progress academically and socially.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: 8/31/06

Hazel Torres