**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**JEANETTE ALLEYNE**, **ET AL.**,
        **Plaintiffs,**

      v.                              **Civil No. 1:06-CV-994**
                                                  **(GLS)**

**NEW YORK STATE EDUCATION**
**DEPARTMENT, ET AL.,**
        **Defendants.**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR PLAINTIFFS:** | |
| Eckert, Seamans Law Firm<br>One International Plaza, 18th Floor<br>Boston, MA 02110 | Devorah A. Levine, Esq.<br>Kenneth Y. Lee, Esq.<br>Michael P. Flammia, Esq. |
| O'Connell, Aronowitz Law Firm<br>54 State Street<br>9th Floor<br>Albany, NY 12207-2501 | Jeffrey J. Sherrin, Esq.<br>Peter Danziger, Esq. |
| Office of Meredith H. Savitt<br>126 State Street, 6th Floor<br>Albany, NY 12207 | Meredith H. Savitt, Esq. |
| **FOR DEFENDANTS:** | |
| Hon. Andrew M. Cuomo<br>New York State Attorney General<br>The Capitol<br>Albany, NY 12224 | Kelly L. Munkwitz, Esq.<br>James B. McGowan, Esq. |

**Gary L. Sharpe**
**District Court Judge**

## Decision and Order

## I. Introduction

Disabled plaintiffs (collectively, "Alleyne") allege that the New York State Education Department and its officials (collectively, "Education Department") have violated their statutory rights under the Individuals with Disability Education and Rehabilitation Acts, and violated their federal and state constitutional rights to due process and equal protection. *See Fifth Amended Complaint, dkt. no. 126.*; *see also* 20 U.S.C. § 1400(d)(1)(A) (Individuals with Disability Education Act ("IDEA")) and 29 U.S.C. § 701 *et. seq.* (Rehabilitation Act). Central to the litigation is whether the Education Department's newly enacted aversive regulations violate Alleyne's rights, and the extent to which federal courts are authorized to intercede in the dispute.[1]

During discovery, the Education Department withheld documents on the basis of four privileges: attorney-client; work-product; deliberative

---

[1] Generically, aversives are behavioral modification techniques applied to students whose conduct risks harm to themselves or others, or interferes with their educational needs. Aversives include skin shock, contingent or specialized food programs, helmets, and mechanical movement limitations or manual restraints. *See Fifth Amended Complaint,* ¶¶ *58, 60; dkt. no. 126.*

2

process; and executive.  *See 11/29/07 Minute Entry*; *Revised Privilege Log, dkt. no. 163; Supplemental Privilege Log, dkt. no. 164*.  The court construed the parties' dispute as an application by the defendants for a protective order, *see* FED. R. CIV. P. 26(c)(1), and ordered submission of the documents for in camera review.

For the reasons that follow, the court concludes that the defendants have failed to satisfy their burden of establishing each element of each privilege asserted.  As to all documents withheld exclusively on the basis of the deliberative process and executive privileges, the court orders immediate disclosure.  As to documents withheld on the basis of the attorney-client or work-product privileges, the court stays the issuance of a disclosure order pending receipt of further evidentiary submissions.  Those submissions must provide sufficient detail for the court to evaluate each element of each privilege as to each document.  As to assertions of work-product privilege, the submissions must provide a basis to assess whether the documents constitute core work-product.

## II. The Privileges

### A. Governing Law and Burden of Proof

Federal privilege law controls when a complaint asserts both federal

3

and state claims. *See Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 21 (N.D.N.Y. 2002) (citations omitted).

The burden of establishing each privilege element rests with the party invoking the privilege. *See, e.g., In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citations omitted) (attorney-client).

### B.  Privilege Log and Foundational Requirements

The federal rules create a process for resolving discovery disputes involving privilege. *See* FED. R. CIV. P. 26(b)(5). Consistent with the burden of proof, the party asserting privilege must expressly state the basis for its claim and describe the non-disclosed documents, communications or things in a manner that will allow its adversaries to assess the claim. *See* FED. R. CIV. P. 26(b)(5)(A)(i-ii). The rules provide for alternative dispute resolution procedures, including: (1) an initial discovery order incorporating the parties' consent to a reasonable procedure for disseminating information and preserving claims for litigation, *see* FED. R. CIV. P. §§ 16, 26(f)(3)(d); (2) a motion for a protective order by the resisting party following a good faith effort to resolve the dispute without court intervention, *see* FED. R. CIV. P. 26(c)(1); and (3) a motion for a compulsion order by the requesting party following a good faith effort to resolve the

4

dispute without court intervention, *see* FED. R. CIV. P. 37(a)(1-2). Ultimately, the court may have to review sealed documents in camera in order to resolve disputes. *See, e.g.,* FED. R. CIV. P. 26(b)(5)(B); *see also In re John Doe Corp.*, 675 F.2d 482, 489-90 (2d Cir. 1982); *In re United States*, 565 F.2d 19, 23 (2d Cir. 1977) (courts have inherent authority to conduct in camera proceedings to determine privilege issues).

When conducting an in camera review, the court's task is nearly impossible absent a detailed privilege log and, if necessary, evidentiary submissions that fill in factual gaps. *See United States v. Constr. Prod. Research*, 73 F.3d 464, 473 (2d Cir. 1996). Whether through the log itself, or the log accompanied by evidentiary devices such as affidavits or depositions, the entire submission must be specific enough to permit the court to identify: (1) the document under consideration; (2) the maker; (3) the intended recipient; (4) each individual who received a copy; (5) the date of the document; (6) the purpose for which it was prepared; (7) the nature of the asserted privilege; and (8) sufficient facts to test the assertion of privilege. The failure to provide sufficient detail to test each legal element of an asserted privilege may result in rejection of the assertion. *See id.* at 473; *see also Children First Found., Inc. v. Martinez*, 1:04-CV-0927, 2007

WL 4344915, *4 (N.D.N.Y. Dec. 19, 2007) (Treece, MJ); *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (Treece, MJ).  Naturally, the necessary detail depends upon the privilege asserted and its discrete elements.  *See Trudeau*, 237 F.R.D. at 334 (citation omitted).

### C. Attorney-Client Privilege

An attorney-client communication is protected if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. at 21, n. 8 (citations omitted); *cf. In re County of Erie*, 473 F.3d at 419 (slightly different formulation but essentially same) (citing *United States v. Constr. Prod. Research, Inc.*, 73 F.3d at 473).  Although a dispute may require analysis of legal nuances beyond the privilege elements alone, the court cannot conduct any analysis absent a proper foundation reflected in a log or

6

evidentiary submissions.  *See, e.g., In re County of Erie*, 473 F.3d at 419-20 (legal advice element in government agency context satisfied if such advice was the communication's predominant purpose); *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 22-26 (W.D.N.Y. 1997) (surveying examples of waiver element).  Thus, it is axiomatic that the court must have information sufficient to analyze whether the privilege elements have been met.

### D.  **Work-Product Privilege**

The court has previously traced the history of the work-product privilege from its classic discussion in *Hickman v. Taylor*, 329 U.S. 495 (1947), through its modification by the 1970 and 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure.  *See generally Baum v. Vill. of Chittenango*, 218 F.R.D. 36 (N.D.N.Y. 2003).  The privilege precludes disclosure of an attorney's core work-product, including his mental impressions, opinions, and legal theories concerning litigation.  *See id.* at 38 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981)); *see also* FED. R. CIV. P. 26(b)(3).  Insofar as non-core work-product is concerned, the privilege is qualified and does not protect everything a lawyer does.  *See Baum*, 218 F.R.D. at 38; *see also Children First Found., Inc.*, 2007 WL

7

4344915, at *11 (citation omitted). Thus, non-core work-product may be subject to disclosure if the requesting party can demonstrate substantial need for the material and undue hardship in obtaining either the material itself or its substantial equivalent. *See Baum*, 218 F.R.D. at 38-39; *Children First Found., Inc.*, 2007 WL 4344915, at *12; FED. R. CIV. P. 26(b)(3)(A)(ii). A document does not automatically lose its status as work-product simply because it also assists agency policy decisions or because it was prepared by a party or its representative. *See Children First Found., Inc.*, 2007 WL 4344915, at *12. However, records prepared in the ordinary course of business are not protected because they are not prepared in anticipation of litigation. *See United States v. Aldman*, 134 F.3d 1194, 1204 (2d Cir. 1998).

### E. **Deliberative Process and Executive Privileges**

Because of imprecise nomenclature in opinions and treatises, it is unclear whether there is any pragmatic difference between what is often interchangeably referred to as the deliberative process or executive privilege. *See, e.g., Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (sub-species of work-product privilege); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999) (encompassed

8

within executive privilege without further explanation of executive privilege). Regardless, the court shares the view that there is no executive privilege *per se* beyond that possibly reposed in the federal executive branch. *See* 26A CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5673 (1st ed. 1992); *see also Children First Found., Inc.*, 2007 WL 4344915, at *6 n.11 (collecting cases). Nonetheless, and despite the varying nomenclature, the parameters of the deliberative process privilege are well-recognized.

The privilege protects advisory opinions, recommendations, proposals, suggestions, and draft and subjective documents that reflect personal opinions rather than those of a governmental agency. In essence, they are pre-decisional deliberations that are a part of the process culminating in the government's ultimate decision or policy. *See Tigue*, 312 F.3d at 80. The privilege serves:

> to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subjected to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

9

*Id.* at 76 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The privilege applies to documents that are (1) inter-agency or intra-agency; (2) pre-decisional; and (3) deliberative. *See Tigue*, 312 F.3d at 76 (citations omitted). Since the documents must be related to the agency's process of reaching a decision, those that post-date the decision are invariably excluded. *See Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005); *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 147 (2d Cir. 1994). The court also concurs with the additional requirements imposed by other judges in this Circuit; namely: the privilege must be asserted by the agency head or her qualified designee; the documents must be specifically identified and described; and the agency must offer precise reasons for asserting confidentiality. *See Lyondell-Citgo Ref., L.P. v. Petroleos De Venezuela, S.A.,* No. 02 Civ. 0795, 2005 WL 356808, at * 3 (S.D.N.Y. Feb. 15, 2005) (citing *In re Grand Jury Subpoena Dated August 9, 2000*, 218 F. Supp. 2d 544, 552 (S.D.N.Y. 2002)).

Like the work-product privilege, the deliberative process privilege is qualified. Thus, it does not protect factual matters, matters that are peripheral to policy formulation, or matters that are incorporated in the final

10

decision or policy.  *See Children First Found., Inc.*, 2007 WL 4344915, at *7-8 (citations omitted).  Furthermore, "when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery."  *Id.* at *7 (collecting cases within the Second Circuit).  Under such circumstances, there is no balancing test the court must apply before requiring disclosure.  *Id.* at *8.[2]

## III.  Conclusion

In summary, the Education Department's Logs, *see dkt. nos. 163-64*, are factually insufficiently to permit identification of each element of each privilege claim, *see United States v. Constr. Prod. Research*, 73 F.3d at 473, and there are no evidentiary devices supplementing the logs.  Thus, as to the attorney-client privilege and with no intention of exhausting the point, the court cannot discern who the lawyer is, who the client is, whether the communication was confidential, and whether the communication was

---

[2]The court has reviewed Judge Treece's citations to authority, and concurs with his conclusions in this regard.

Where the agency decision is peripheral to the litigation, courts have balanced the interest of the litigant and public to know and the government's need to protect frank discussions and the decision-making process.  When balancing, relevant factors include: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."  *Children First Found., Inc.*, 2007 WL 4344915, at *8 (citations omitted).

11

for the purpose of securing a legal opinion, legal services or assistance in some legal proceeding.[3] As for the work-product privilege, there is no basis to discern what was prepared in anticipation of litigation - as opposed to the routine business of the agency - much less a basis to discern who prepared what and whether it constitutes core or non-core work-product.

As to the deliberative process privilege, the same fundamental observations apply. However, even if the court presumes that the designated documents are inter-agency, pre-decisional and deliberative, the Education Department's decision-making process is directly relevant to this litigation. Accordingly, those documents must be disclosed.

Based upon the foregoing, it is hereby

**ORDERED**:

1. As to all documents designated as protected by the deliberative process or executive privilege, the Education Department's request for a protective order is **DENIED**, and as to those exclusively relying on either privilege to preclude disclosure (D-00140 - D-00161, and D-39648 - D-39693) such documents shall be disclosed immediately;

---

[3]To the casual observer, it might appear that if some document - E-Mail or otherwise - had some lawyer's name in the distribution list, it was designated privileged. If so, the court suggests that the Education Department more thoughtfully analyze its assertion of privilege.

12

2. As to all remaining documents designated as protected by the attorney-client or work-product privilege - in whole or in part - the Education Department's request for a protective order is **DENIED**, and such documents shall be disclosed unless a renewed motion for a protective order is filed on or before **February 25, 2008,** such renewed motion to be accompanied by a detailed log and/or other evidentiary submissions that address each element of the privilege asserted and, as to the work-product privilege, demonstrate that the document consists of core work-product.

**SO ORDERED.**

Date: February 6, 2008
    Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge

13